# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA
# OKLAHOMA CITY DIVISION

| | |
|---|---|
| ROBERT WILLIAMS, Individually and For Others Similarly Situated<br><br>v.<br><br>SANDRIDGE ENERGY, INC. | Case No. ___CIV-22-62-SLP___<br><br>Jury Trial Demanded<br><br>Collective Action |

## ORIGINAL COMPLAINT

### SUMMARY

1. Plaintiff Robert Williams (Williams) brings this lawsuit to recover unpaid overtime wages and other damages from Sandridge Energy, Inc. (Sandridge) the Fair Labor Standards Act (FLSA).

2. Williams worked for Sandridge as a Completions Consultant.

3. Williams and the Day Rate Workers (as defined below) regularly worked for Sandridge in excess of forty (40) hours each week.

4. But these drilling and completions consultants did not receive overtime while working for Sandridge.

5. Instead of paying overtime as required by the FLSA, Sandridge improperly classified Williams as an independent contractor and paid Williams and the Day Rate Workers a daily rate with no overtime compensation.

6. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Sandridge conducts substantial business in this district and division.

9. Sandridge is headquartered in in this District and Division.

## THE PARTIES

10. Williams worked for Sandridge from May of 2017 until March of 2020.

11. Throughout his employment, Williams was paid a flat daily rate for each day worked regardless of the total hours worked in a workweek ("day rate pay plan").

12. Sandridge classified Williams as an independent contractor during this time period.

13. Williams' consent to be a party plaintiff is attached as Exhibit 1.

14. Williams brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by Sandridge's day-rate plan. These oilfield workers were paid a flat amount for each day worked for Sandridge and failed to receive overtime for all hours that they worked in excess of 40 hours in a workweek in violation of the FLSA.

15. The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All drilling and completions consultants who worked for, or on behalf of, Sandridge Energy who were classified as independent contractors and paid a day rate with no overtime in the past three (3) years.** ("Day Rate Workers").

16. Members of the proposed collective can be readily ascertained from Sandridge's records.

17. Sandridge Energy, Inc. is a Delaware Company and may be served with process by serving its registered agent: The Corporation Company, 1833 S. Morgan Rd., Oklahoma City, Oklahoma 73128.

18. Sandridge filed for bankruptcy on May 16, 2016.

19. Sandridge emerged from bankruptcy on October 4, 2016.

20. Williams' claims only seek damages after October 4, 2016.

## COVERAGE UNDER THE FLSA

21. At all times hereinafter mentioned, Sandridge was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

22. At all times hereinafter mentioned, Sandridge was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

23. At all relevant times, Sandridge has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

24. At all relevant times, Sandridge has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, hard hats, smart phones/devices, computers, etc.) that have been moved in or produced for commerce.

25. In each of the past 3 years, Sandridge's annual gross volume of sales has exceeded $500,000 for at least the past 3 years.

26. At all relevant times, Williams and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

27. Sandridge uniformly applied its policy of paying its Day Rate Workers, including Williams, a day rate with no overtime compensation.

28. At all relevant times hereinafter mentioned, Sandridge treated Williams and the Day Rate Workers as employees and uniformly applied their day-rate pay practice to Williams and the Day Rate Workers.

29. The misclassification of Williams and the Day Rate Workers as independent contractors does not alter their status as employees for purposes of this FLSA collective action.

30. Sandridge applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

31. By paying its Day Rate Workers a day rate with no overtime compensation, Sandridge violated (and continues to violate) the FLSA's requirement that it pay employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

32. As a result of this policy, Williams and the Day Rate Workers do not receive overtime as required by the FLSA.

33. The uniform compensation scheme of paying its Day Rate Workers a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

**THE FACTS**

34. Sandridge leases and develops oil and gas acreage throughout the Mid-Continent Basin in Oklahoma and Kansas.

35. To achieve its business objectives, it hires personnel (like Williams) to perform drilling operations.

36. Many of these individuals worked for Sandridge on a day rate basis (without overtime pay) and were classified as independent contractors.

37. These workers make up the proposed collective of Day Rate Workers.

38. Regardless of consultant position, these identifiable workers are subjected to the same or similar illegal pay practices for similar work.

39. While working for Sandridge, the Day Rate Workers were not paid overtime for hours worked over 40 in a workweek.

40. For example, during the relevant time period Williams worked for Sandridge as a Completions Consultant.

41. Throughout his employment with Sandridge, Sandridge classified Williams as an independent contractor and paid him on a day rate basis.

42. Sandridge directed Williams to work 12 or more hours a day for 14 or more days in a row.

43. Williams and the Day Rate Workers work and worked for Sandridge under its day rate pay scheme.

44. Williams and the Day Rate Workers do and did not receive a salary.

45. If Williams and the Day Rate Workers did not work, they did not get paid.

46. Williams and the Day Rate Workers received a day rate.

47. Williams and the Day Rate Workers did not receive overtime pay.

48. This is despite the fact Williams and the Day Rate Workers often worker 12 or more hours a day, for 7 days a week, for weeks at a time.

49. For example, Williams received a day rate for each day he worked for Sandridge.

50. Although he typically worked 7 days a week, for 12 or more hours a day, he did not receive any overtime pay.

51. Williams and the Day Rate Workers received the day rate regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

52. Williams and the Day Rate Workers are not employed on a salary basis.

53. Williams and the Day Rate Workers do not, and never have, received guaranteed weekly compensation from Sandridge irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

54. Williams and the Day Rate Workers work in accordance with the schedule set by Sandridge.

55. Williams' work schedule is typical of the Day Rate Workers.

56. Sandridge controls Williams' and the Day Rate Workers' pay.

57. Likewise, Sandridge controls Williams' and the Day Rate Workers' work.

58. Sandridge requires Williams and the Day Rate Workers to follow its policies and procedures.

59. Williams' and the Day Rate Workers' work must adhere to the quality standards put in place by Sandridge.

60. Williams and the Day Rate Workers are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

61. The work Williams performed was an essential part of Sandridge's core business.

62. During Williams' employment with Sandridge and while he was classified as an independent contractor, Sandridge exercised control over all aspects of his job.

63. Sandridge did not require any substantial investment by Williams for him to perform the work required of him.

64. Sandridge controlled Williams' opportunity for profit and loss by dictating the days and hours he worked and the rate he was paid.

65. Williams was not required to possess any unique or specialized skillset (other than that maintained by all other workers in his respective position) to perform his job duties.

66. While working for Sandridge, Sandridge controlled all the significant or meaningful aspects of the job duties performed by Williams.

67. Sandridge exercised control over the hours and locations Williams worked, tools and equipment used, and rates of pay received.

68. No real investment was required of Williams or the Day Rate Workers to perform his job.

69. More often than not, Williams utilized equipment provided by Sandridge to

7

perform his job duties.

70. Williams did not provide the significant equipment he worked with on a daily basis. Sandridge made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Williams worked.

71. Williams did not incur operating expenses like rent, payroll, marketing, and insurance.

72. Williams was economically dependent on Sandridge during his employment with Sandridge.

73. Sandridge set Williams' rates of pay, his work schedule, and effectively prevented (or outright prohibited) him from working other jobs for other companies while he was working on jobs for Sandridge.

74. Sandridge directly determined Williams' opportunity for profit and loss.

75. Williams' earning opportunity was based on the number of days Sandridge scheduled him to work.

76. Very little skill, training, or initiative was required of Williams to perform his job duties.

77. Indeed, the daily and weekly activities of Williams and the Day Rate Workers were routine and largely governed by standardized plans, procedures, and checklists created by Sandridge.

78. Virtually every job function was pre-determined by Sandridge, including the tools and equipment to use at a job site, the data to compile, the schedule of work, and related work duties.

79. The Day Rate Workers were prohibited from varying their job duties outside of the pre-determined parameters and were required to follow Sandridge's policies, procedures, and directives.

80. Williams and the Day Rate Workers performed routine job duties that were largely dictated by Sandridge.

81. Williams was not employed by Sandridge on a project-by-project basis.

82. In fact, while Williams was classified as an independent contractor, he was regularly on call for Sandridge and was expected to drop everything and work whenever needed.

83. Williams worked for Sandridge for almost 4 years.

84. All Sandridge's Day Rate Workers perform similar duties in furtherance of the oil and gas industry.

85. Williams and the Day Rate Workers provide oil and gas procurement services for Sandridge.

86. At all relevant times, Sandridge maintained control over Williams and the Day Rate Workers via hiring, firing, discipline, timekeeping, payroll, and other employment practices.

87. Williams and the Day Rate Workers do not have the power to hire or fire any employees.

88. Williams' working relationship with Sandridge is similar Sandridge's relationship with its other Day Rate Workers.

89. Sandridge knew Williams and the Day Rate Workers worked more than 40 hours in a week.

90. Sandridge knew, or showed reckless disregard for, whether the Day Rate Workers were entitled to overtime under the FLSA.

91. Sandridge has been sued for this same day rate pay practice before.

92. Nonetheless, Williams and the Day Rate Workers were not paid overtime for while working for Sandridge.

93. Sandridge was aware of the requirements of the FLSA.

94. Sandridge did not investigate the legality of its classification of Williams and the Day Rate Workers as exempt from overtime pay or independent contractors.

95. Sandridge did not review the dob descriptions of Williams and the Day Rate Workers.

96. Sandridge did not conduct any time studies of the exempt and non-exempt job duties performed by Williams and the Day Rate Workers.

97. Sandridge did not conduct any audit of whether Williams and the Day Rate Workers were properly classified as independent contractors.

98. Sandridge was aware of Williams and the Day Rate Workers' job duties.

99. Sandridge was aware of Williams and the Day Rate Workers' primary duties.

100. Sandridge was aware of Williams and the Day Rate Workers' hours worked.

101. Sandridge was aware Williams and the Day Rate Workers worked in excess of 40 hours in a workweek.

102. Sandridge recklessly disregarded its FLSA obligations and misclassified Williams and the Day Rate Workers as independent contractors and paid them a day rate.

103. Sandridge willfully violated the FLSA.

## CAUSES OF ACTION
## FLSA VIOLATIONS

104. By failing to pay Williams and Day Rate Workers overtime at one-and-one-half times their regular rates, Sandridge violated the FLSA's overtime provisions.

105. Sandridge owes Williams and Day Rate Workers the difference between the rate actually paid and the proper overtime rate.

106. Because Sandridge knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Sandridge owes these wages for at least the past three years.

107. Sandridge is liable to Williams and the Day Rate Workers for an amount equal to all unpaid overtime wages as liquidated damages.

108. Williams and Day Rate Workers are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COLLECTIVE ACTION ALLEGATIONS

109. Williams incorporates all previous paragraphs and alleges that the illegal pay practices Sandridge imposed on Williams were likewise imposed on the Day Rate Workers.

110. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

111. Numerous other individuals who worked with Williams indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

112. Based on his experiences and tenure with Sandridge, Williams is aware that Sandridge's illegal practices were imposed on the Day Rate Workers.

113. The Day Rate Workers were all not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

114. Sandridge's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Workers.

115. Williams' experiences are therefore typical of the experiences of the Day Rate Workers.

116. The specific job titles or precise job locations of the Day Rate Workers do not prevent collective treatment.

117. Williams has no interests contrary to, or in conflict with, the Day Rate Workers. Like each Day Rate Worker, Williams has an interest in obtaining the unpaid overtime wages owed to him under state and/or federal law.

118. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

119. Absent this action, many Day Rate Workers likely will not obtain redress of their injuries and Sandridge will reap the unjust benefits of violating the FLSA.

120. Williams knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective.

121. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## JURY DEMAND

122. Williams demands a trial by jury

## PRAYER

123. WHEREFORE, Williams prays for judgment against Sandridge as follows:

   a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

   b. For an Order pursuant to Section 16(b) of the FLSA finding Sandridge liable for unpaid back wages due to Williams and the Day Rate Workers for liquidated damages equal in amount to their unpaid compensation;

   c. For an Order awarding Williams and the Day Rate Workers their reasonable attorneys' fees and expenses as provided by the FLSA;

   d. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

   e. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
    **Michael A. Josephson**
    Texas Bar No. 24014780
    **Andrew W. Dunlap**
    Texas Bar No. 24078444
    **Richard M. Schreiber**
    Texas Bar No. 24056278
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    rschreiber@mybackwages.com

**AND**

    **Richard J. (Rex) Burch**
    Texas Bar No. 24001807
    **BRUCKNER BURCH PLLC**
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**